Good morning. We're ready to call our first case. Talley v. PA.Dept.of Corrections. Good morning, your honors, and may it please the court. My name is Andrew Butaro, and I'm here as amicus counsel on behalf of the appellant, Quintez Talley. With the court's permission, I'd like to resume. Before you start, let me just say we really appreciate your firm stepping in at the request of the court and helping out with this case, serving as appellant counsel. It's a wonderful brief. It's just a very well-written, I'm not saying you're right, but it's just nothing wrong either, but it's just a very well-done brief, and I want to add my thanks. Well, thank you very much for your kind words, and we appreciate it. I feel like I have to jump in. Yes. He feels grateful. He's from Jersey, so he'll have to listen to us. Oh, my heavens. We're going to go there right away? Well, I'm glad the panel is unanimous on this question. With the court's permission, I'd like to reserve three minutes for rebuttal, please. Done. Great. Mr. Talley should be permitted to proceed informer paupers in this appeal because he has not accrued three strikes under the PLRA. All three of the issues that the court identified in its order appointing counsel independently contribute to making Pele a mixed dismissal that cannot qualify as a strike. Can you help us out with the question of who's got the burden of proof to deal with an issue if it's not clear what the district court's basis for dismissal was? Sure, I'd be happy to. Generally, the courts of appeals have held that the burden of production when it comes to the IFP question is on the party opposing that IFP status, but the party seeking to proceed informer paupers bears the ultimate burden of persuasion. Right. So if I understood the D.C. Circuit's position correctly, it sounds like that's what you're articulating here, In the first instance, the government has to come, or the state has to show up and say, Okay, look, here's a dismissal. We think it's a strike because of one of the enumerated grounds. Once they do that, then the burden of going forward and showing that it's not one of the enumerated grounds rests on Mr. Talley, right? That's correct, yes. It will be Mr. Talley's burden of persuasion on the question of his eligibility to proceed. And in evaluating whether he can satisfy the requirements to proceed IFP, we're of course looking to what this court has said as to what constitutes a dismissal for purposes of Section 1915G, which is the three strikes rule of the PLRA. And this court has said many times, most recently in the presidential decision, Garrett v. Murphy, that a dismissal must be made explicitly on strike captain grounds for a strike to accrue. But when you look at the excessive force claim, right, and you look at the heading that it comes under, is your argument that it's the voluntary dismissal that identifies it as one that shouldn't fall within the ambit of the enumerated grounds? Because it clearly, the district court has identified these claims fall within the ambit of 12b-6. So help us there. Sure. There are a few reasons why the heading doesn't resolve what we argue is the lack of clarity here on the dismissal grounds. One reason is because in taking up Talley's excessive force claim, the Palais decision dedicates three sentences to it and doesn't say in the three sentences that this claim is being dismissed pursuant to Rule 12b-6. It doesn't say in that. We've always said, not only here but in all the fields of law, that no magic words are necessary. And the voluntary withdrawal was pursuant to the assertion of sovereign immunity. And the court, in accepting the withdrawal, said the claim was therefore dismissed. How would that not be a 12b-6 dismissal? Well, there are a couple of reasons. So first, we know that Rule 12b-6 isn't the exclusive standard that governed how the Palais court looked at each of these claims. We know that the Palais court analyzed the exhaustion issue, for instance, under Rule 56. So 12b-6 isn't the exclusive standard governing the analysis here. I will also— It's not an exhaustive claim. Excessive force, and that is an exhaustive claim. 12b-6, I don't think there's any dispute about that. He did exhaust the excessive force claim. It got into court. Legitimately, the issue was that when he got there, there was a sovereign immunity preclusion of the claim. So the excessive force claim and the voluntary withdrawal, that's actually not the sovereign immunity issue. That ties to the assault and battery claim, which is another issue. But your point remains, Your Honor, that the heading does seem to suggest a potential ground for dismissal. It certainly does. It's explicit. So why would we not look at it the way Pennsylvania is urging us to look at it? So let's look at that heading specifically, just exactly what it says. The heading that the government is pointing to in regards to the excessive force claim says, the complaint fails to state a claim against the Commonwealth defendants, right? Saying that Talley's complaint fails to state a claim doesn't mean that all of Talley's claims are dismissed for failure to state a claim. And I think a simple thought experiment could make this clear. You're emphasizing this as it's being a second-order heading, right? That's part of it, yes. Because if we thought it was meant to pertain, and logically it would pertain to each one of the three that follows, the way the heading is set up, we would think, okay, it's saying the excessive force claim doesn't state a claim, right? Because that language pertains to each of the subheadings that follow, does it not? Not necessarily, because the excessive force claim that was voluntarily withdrawn isn't necessarily based on Rule 12b-6. The court could have simply been exercising its inherent authority. And who does that cut against based on our very first exchange this morning? If there's ambiguity, who's got the burden of persuasion? It's your client. I mean, the person on whose behalf you're arguing kindly today. I mean, isn't the burden of persuasion with him? So if we're left wondering, doesn't that cut against him? It doesn't, no, because although Mr. Talley has the burden of persuasion on this question, what we're looking at is the background law on Section 1915G. And that is a technical statute that provides the exclusive three grounds for what qualifies as a strike-accruing dismissal. And this court has made clear in decision after decision that it must be explicit. But what inference could we possibly draw from that subheading other than everything that comes after is pursuant to 12b-6? Give me a plausible inference that we can draw besides that. Sure, Your Honor. The court may have simply thought that because Talley wasn't standing on that claim, it didn't have to construe it under Rule 12b-6 at all. It might have thought that the claim was simply out of the suit. It might have thought that it could exercise as it wished. No, no, no. I'm sorry. Go ahead. No, I'm good. My question was, what other inference could a reader, our panel, come to but that everything that came after that was pursuant to 12b-6? I think that... Give me a reasonable inference that one could draw besides that. A reasonable inference could be that to the extent that the court was dismissing claims that were live in the action, it might have been dismissing them for failure to state a claim to some extent. But in the specific discussion of those claims under that heading, recall that the Palais court sometimes will invoke specifically a failure to state a claim. It will sometimes invoke, for instance, in regards to the ADA claims, the Twombly-Iqbal plausibility standard of Rule 12b-6. When it's discussing the excessive force claim, it simply says that Talley voluntarily withdraws that claim or voluntarily agrees to dismiss that claim, so it's dismissed. It doesn't bring in that Rule 12b-6 language. It doesn't specifically cite it. What language would we require in that instance? It seems that if the opening salvo is withdrawn, I mean that would seem to be superfluous to go through any recitation of what the requirements are, right? Because it's withdrawn. Not necessarily because we know that the court did expand and expound on the dismissal basis for some of the other claims. The other thing is the court could have said... Were any of those other claims withdrawn? They were not, no. So the court could have, by the way, the court could have easily said, you know, even if Talley had not withdrawn this claim, we would nonetheless dismiss it for failure to state a claim under Rule 12b-6. So you're arguing that it has to be more explicit than saying doesn't state a claim? Yes. For a strike to accrue, the court has to... That's a pretty close standard. You're arguing magic words, and we said we don't require magic words, but it's hard to hear your argument and conclude anything other than the court has to really use magic words if something's akin to magic words. I think something so clear it couldn't be mistaken, which, of course, then seems to shift the burden of proof back to the state  Well, let's go back to Garrett v. Murphy, the recent decision that discusses the magic words requirement, or lack thereof, any such requirement, right? In that decision, you had an underlying district court opinion that expressly stated that all claims were dismissed on strike-counting grounds. And I'll point out, by the way, that the parties don't dispute that there are two strikes that Talley has accrued in this case, right? And those two decisions also have that same sort of explicit discussion that states at the end of the opinion... There's no question that things could be more explicit. That's really not what we're trying to wrestle with here. And, in fact, let's talk about the assault and battery for a second, because that might throw some light on this. As you point out, that's the one in which it may be unclear whether the court was addressing this on sovereignty grounds under 12b-1 or failure to state a claim under 12b-6. You seem to want to have it both ways, so to speak. You want to say, hey, when we're talking about stuff, believe us when we say we're just withdrawing the claim and accept that that's what the court's doing with respect to excessive force. But when they, the state, says we're moving on the basis of failure to state a claim, you should really believe that the court did it on the basis of sovereign immunity. If we're going to accept that Mr. Talley can frame it and that it sticks with respect to excessive force, that he can say I'm withdrawing and that's the way it should be seen, why shouldn't we do the same thing when we're looking at the assault and battery claim and say, okay, the state chose to do this on the basis of 12b-6 and we'll accept that that's the way it's framed and that's the way the district court decided it. Well, as a starting matter, we're looking to the court's opinion and the court's order. Garrett v. Murphy makes that clear. It also says in Garrett that the district court's opinion must be read as an integrated whole. And you concede that in your brief, which would mitigate against the kind of magic language analysis that you're trying to get us to rely upon. Well, I think that the nature of whether the dismissal ground is explicit or not obviously has to turn to some extent on what the claim is, right? And so part of the issue here is that not only did the court in dismissing the assault and battery claim, it didn't in that paragraph, putting the heading aside, didn't in that paragraph expressly dismiss it under Rule 12b-6 or for failure to state a claim. We're looking at that in the context of the fact that Rule 12b-6 isn't the exclusive vehicle for disposing of a claim on sovereign immunity grounds. And so that's what contributes to the overall lack of clarity here. I see my time has expired, although, of course, I'd be happy to answer more questions if the panel would like. Thank you. Judge Greenway. Yeah. Just give me one second. Sorry. I'm good for the moment. Thank you. OK. I'll be back. Thank you very much. Thank you. May it please the Court. My name is Michael Scorinci. I'm a Deputy Attorney General with the Pennsylvania Office of Attorney General. I'm here representing the appellees, the Pennsylvania Department of Corrections, and their various named officials. Start. OK. Let's jump right in, Mr. Scorinci. Sure, Your Honor. And start, if you would, with the excessive force claim. The court in Pillai did, in fact, say exactly what the pro bono counsel has said. The only language dealing with the excessive force claim under the heading excessive force claim is he's withdrawn, it's dismissed on that basis. That's it. That's the only thing they say. Under the heading excessive force, it's withdrawn, dismissed on that basis. Why doesn't that just mean exactly what it says, which is I don't even have to talk about this. He's withdrawn it. Done. I want to be clear about a few things. First is it's under a heading, as you've all mentioned. Well, Senator, that's a second-tier heading. And then under that is another heading, and that heading is excessive force. Right. And the only thing under that heading is what I've just described. It says the court was not bound by Mr. Talley's characterization. It did not use the words voluntarily withdraw. It used the words he agreed to dismiss. Now, yes, it does. It says that Mr. Talley, that he voluntarily agreed to dismiss. It did not use the words withdraw because this could not have been a withdrawal, could not have been consistent with the Federal rules of ---- It was dismissed. It's got to be a specific kind of dismissal to fit under an 1815G. Yes. How does that help you? Maybe that's where you're going. Well, actually, I am where I'm going, Your Honor. There's five markers that this was a 12B6 dismissal. That was the exclusive basis for our motion. The court invoked that standard at the outset. The heading again said the DOC, there's no complaint, there's no claim stated against the DOC defendants. It said this claim, that this claim will be dismissed, and then finally the court engaged in a futility analysis. And the important point here is Mr. Talley could not have used, that this so-called withdrawal was not in any way consistent with the Federal rules of civil procedure. The proper way to withdraw is through a motion for a leave to amend under Rule 15. Well, that doesn't, you're kind of attributing a certain sophistication to a pro se litigant, which we don't attribute. He is very sophisticated, Your Honor. Well, he's prolific. That's not the same thing as sophisticated. Now, here's the language, the precise language. It says defendants are accused of violating his rights under excessive force clause. Talley, however, represents in his brief in opposition to the Commonwealth defendants' motion to dismiss that he has voluntarily agreed to dismiss this claim. Therefore, this claim is dismissed. So you're asking us to read into voluntarily agreed to dismiss a concession that he cannot state a claim. Absolutely, because the only thing he could have agreed with respect to our motion was that he failed to state a claim. We made that very clear in our motion. He didn't say, I agree with the Commonwealth. He said, I agree, go ahead and dismiss it. But I think we're back to square one with the court is not bound by his characterization. He can't chart the course for the court on how to dismiss a claim. But our precedent is, as Mr. Boutar was described, we require district courts to be, they don't have to use magic words, but they do have to be explicit. If they're going to say we're dismissing for failure to state a claim, they need to say that. It seems like you're asking us to do something that is, in fact, contrary to our previous precedent and allow a district court to not be explicit about the ground on which it's dismissing. Again, Your Honor, I go back to the heading where it says the complaint fails to state a claim. The heading, and that's the only inference you can make from that. The heading is sufficient. So going forward, what you want us to do is say, if there's a heading, despite what may come after it, let's say there was no reference to voluntarily agreeing to dismiss, right? You have the heading that just says dismissed. Is that enough? I think that is enough, Your Honor. Okay. We're going to change the hypothetical. Okay. Heading, nothing beneath it that alludes to dismissal. Just the heading says where we are and goes on to the next claim. Is that enough? If it's in the face of an exclusive 12B6 motion, absolutely. Okay. So basically the point we're at now is if there's a heading that can be identified with 12B6, that's enough. Yes. So let's say the heading said the complaint, instead of mirroring the rule, let's say the heading said the complaint falls short. Is that enough? The only word is falls short. That's hypothetical. The complaint falls short. No, because you've made it clear that it has to say, either refer explicitly to 12B6 or use those words like failure to state a claim. So I think that's the Garrett standard. That's Ball v. Famiglio standard. If you have that, no magic words, but that's enough. Okay. So falls short. No, that's not enough. So basically side heading, subheading, which states that fails to state a claim or some reasonable iteration or permutation of that, that's enough. Yes. If there's no more questions on the state constitutional law claim, Your Honor, I'm happy to move on to the next issue, which is sovereign immunity. Yeah, sure. Go ahead. Now, the rule you've said is the district court must explicitly and correctly conclude that the complaint reveals immunity defense on its face and dismiss under Rule 12B6. So there's two elements, an explicit dismissal and a correct dismissal. Now, I think we've gone through the five markers. Nothing's changed since what I said two minutes ago. 12B6 motion exclusively, the 12B6 standard, the heading, this claim will be dismissed with prejudice and then a futility analysis. This is very explicit. If it's, in fact, if sovereign immunity is a jurisdictional point, then it doesn't matter what the district court said on that point, does it? In fact, I thought you acknowledged that in your briefing, that if the court got it wrong and we said sovereign immunity, that's jurisdictional, that's a subject matter jurisdiction dismissal, that would not be struck, right? A subject matter jurisdictional dismissal would not. But this, state sovereign immunity, does not go to subject matter jurisdiction. You answered this question in Ball v. Fumiglia, which I know you authored, and there you looked at Jones v. Bach. And in Jones v. Bach, a Supreme Court case, the court said, whether a particular claim is subject to dismissal is not determined in the abstract but by the allegations in the complaint. The court used the example of the statute of limitations. It could be clear from the face of the complaint that an action is time barred, and you simply extended that rule to the failure to exhaust and immunity-based defenses. And that's exactly what the district court did here. It looked at the complaint, specifically Paragraph 30, and said, this is an assault and battery claim. The Commonwealth has not waived immunity for that. It has not waived immunity for that, right. So, well, let's dilate on this a little bit. Is sovereign immunity a subject matter jurisdiction? No, it does not. It is not compatible with subject matter jurisdiction, and I'll explain to you why. Thank you. The jurisdiction of the federal courts, as your honors know, comes from the Constitution and from the acts of Congress. And as you've said many times, no party can consent to federal jurisdiction. And what happens with state sovereign immunity is that the Pennsylvania legislature decides that we're either going to consent to suit and waive immunity. So it would be the Pennsylvania legislature that's deciding that it's being subject to the jurisdiction of the federal courts. That's simply not compatible with subject matter jurisdiction. So even if we're talking about in the abstract, it's not compatible. So I would say it's not exclusively. And this court — What do you mean it's not exclusively? Like, are you saying this is some sort of chameleon thing, that it can be subject matter jurisdiction sometimes and subject matter jurisdiction other times? We've seen some courts use 12 — I mean, some litigants use 12b-1, and the court's dismissing on 12b-1. But this court has used 12b-6 in a number of cases. I cited to many of them at page 27. Have we used 12b-1? I don't have one off the top of my head, but I think — Because it doesn't help you. I don't recall a famous lawyer answer, but I don't recall any from Mr. — There might have been some district court cases, I think, that Mr. Butaro cited. Yeah, there are. And if those district court cases were correct, and it actually goes to our subject matter jurisdiction, am I right that you at least acknowledge that, yeah, if that's true, and the dismissal as a matter of law should have been for subject matter jurisdiction, we wouldn't be under an enumerated ground. We would have a mixed dismissal, and we would not have a strike, right? That's a lot to follow there. I would say, again — Well, let's just then follow me. Yeah. I thought I saw in your briefing, and maybe I was wrong about this, an acknowledgment that if there is subject matter jurisdiction dismissal under 12b-1, then that is not an enumerated ground. That's all correct. There cannot be a strike. Yes, that's all correct. So if sovereign immunity is a matter of subject matter jurisdiction, something that the state can raise at any time, including on appeal for the first time, then the correct dismissal would be 12b-1, not 12b-6, because you can't blow past subject matter jurisdiction and start dismissing on the merits. You've got to address your subject matter jurisdiction, and you've got to say, I don't have a basis for deciding this. You're out of court. Ergo, no strike. No, I go back to my answer regarding Jones v. Bach and Ball v. Smiglio. The pivotal question is, what's in the complaint? What are the allegations? Is it revealed on the face of the complaint? Well, that seems odd to me, because what you're really saying is, what's in the complaint will control whether or not there's subject matter jurisdiction, which, as you've rightly noted, is absolutely at odds with our precedent that says, it doesn't matter what the parties say. What matters is whether we've got subject matter jurisdiction, and that stands independent of what the parties say. But let's move on. You're making a jurisdictional distinction between sovereign immunity arising from state sovereignty and sovereign immunity arising from federal sovereignty, I thought you were saying. Yes. And in the latter subject, you've got subject matter. You don't have subject matter jurisdiction, whereas in the former, you do have subject matter jurisdiction to entertain the claim, but you're saying it's a 12b-6 because the Commonwealth hasn't consented. Therefore, no claim has been stated, but there's subject matter jurisdiction to reach that determination. Were there state sovereign immunity involved? I think that's what you're saying. I think that's what I'm saying, too. I think we have to make a distinction between Eleventh Amendment immunity, which is in the Constitution, and here we have state sovereign immunity. The Eleventh Amendment would be from the Constitution, whereas state sovereign immunity, again, is determined by the Pennsylvania legislature. So, yes, you have subject matter jurisdiction because it deals with— Can the state waive its sovereign immunity? Yes. Okay. Yes, that's my answer. But even if you had subject matter jurisdiction, and let's go on the part of the hypothetical that the state has within its powers whether it chooses to waive or not, and then, so, right? Yes. Now we're focused on, you know, what's required in the complaint, and if the court says explicitly that on its face clearly sovereign immunity applies, then that's bad for the petitioner, right? Yes.  Is it clear here that sovereign immunity applies such that the plaintiff should know that and therefore this should count as a strike? Because in the opinion, the judge notes, well, the Commonwealth is a party that clearly immunity applies there, and she goes on to say, well, when you look at an employee acting in the course of their employment, that's clear as well. But couldn't a plaintiff in that circumstance be thinking about whether there was some individual liability that might arise, in which case it wouldn't be clear on its face? The complaint was directed only on a single defendant here, Lieutenant Morris, and as far as whether he should have known, I mean, the prisoner obviously takes notice of the law. I mean, he's not, you know, we can't presume that he's ignorant, so I'm not sure if I'm answering your question exactly, Judge Greenaway. Well, I guess my question is, let me just reference the language. A dismissal based on immunity of the defendant, whether absolute or qualified, does not constitute a PLRA strike, including a strike based on frivolousness, unless a court, one, explicitly and correctly concludes that the complaint reveals the immunity defense on its face, and two, dismisses the unexhausted complaint under 12b-6 or expressly states the ground for dismissal as frivolousness. Right? That's one of our cases. So my question is, as to the point one, which is the complaint reveals the immunity defense on its face. If the only party were the Commonwealth, then I could understand that. But it's an individual. Yes. And clearly the individual is acting within the course of their employment. But the individual, at least from the plaintiff's standpoint, could have some individual liability. So why? No, he couldn't have individual liability. He's still subject to state statute. So I understand that's what the law is. Yeah. Well, couldn't it be perceived that, which is why you wouldn't say it's clear on its face. Well, to answer your question, I think he may be thinking about individual liability, and that's how the court examines it. This is an assault and battery. Is that something that the Commonwealth, including its officers, has waived? So I don't think it matters from his perspective. Your Honor, I have still two more issues. My time is up. You're on our time now. Okay. If my colleagues will indulge me, I want to move to the medical malpractice. Sure. Schmeigel, our recent 2015 – I mean, not that recent anymore. Time flies. 2015. We said that a certificate of merit dismissal, that is, a dismissal of a medical malpractice claim based on the lack of filing of a certificate of merit, is not something that can be done properly. You can't dismiss because they have time to file the certificate of merit, and therefore a certificate of merit disposition has to be by summary judgment, right? No, that's not exactly what you said, and I think we have to start with the premise. If it can't be done by dismissal and it has to be done based on some discovery beyond the complaint, how could it not be the case that you're in summary judgment land just by operation of the rules? You did not say in Schmeigel that Rule 56 is the exclusive basis for dismissing under certificate of merit. Even if we didn't take that last step, you take the step with me that I just posed to you. If it cannot be done properly under 12b-6, then isn't the only vehicle left to you as a defendant to dispose of it to move for summary judgment? Yes, but a certificate of merit is a pleading, and under Rule 1042.4 of the Pennsylvania Rules of Civil Procedure. What do we care about that when our precedent says you can't do this as a motion to dismiss? I mean, there was over-vigorous dissent, but it was a dissent. You care, Your Honor, because you said that this is a rule for purposes of Erie. It's a substantive law, so you have to apply state law, and state law says it's a pleading. Well, it sounds like what you're saying is you got it wrong in Schmeigel. No. So you should ignore what Schmeigel says because the dissent was right because this is what our state law says. No, I'm not saying that because in Schmeigel, the question before the court was about timing. Schmeigel is about timing, whether there's a conflict between a Rule 12b-6 motion, the time for making that motion, and the timing requirements for a certificate of merit. And you said no. You said you can always make a motion for summary judgment. So you looked at the right more broadly than just the right to move under 12b-6. You said it's the right to terminate the case at some point. And since Schmeigel, as Your Honors know, as one district court said, the Third Circuit and the district courts in Pennsylvania have consistently allowed defendants to challenge defective certificates of merit in a motion to dismiss. And I've cited numerous cases on my brief, pages 31 to 32. I think I cited six different cases where you've done that. So you have not read Schmeigel. But they are different than the rules in New Jersey for certificates of merit. That's absolutely correct. Your Honor, affidavit of merit in New Jersey is not a pleading. It is submitted 60 days after the pleading is closed. Under Rule 1042.4, entitled responsive pleading, a defendant is under no obligation to answer the complaint until a certificate of merit is filed. Then why shouldn't it be summary judgment? It can be summary judgment, Your Honor, and it has been in some cases. But in other cases, it's been Rule 12b-6. As I pointed out in my brief, there's no problem with the timing here, and there's no problem with considering inappropriate material. If the case originates out of New Jersey, the tortious act originates out of New Jersey, would not that be a situation where summary judgment would be appropriate and not 12b-6 dismissal? Yes. Because it's an affidavit of merit in New Jersey under State law is filed 60 days after the pleading is closed. If we're still in the pleading stage. If the court dismissed on 12b-6, but in fact it should have dismissed by granting summary judgment, what do we do about that? Well, then it wouldn't be, if we're talking about a prisoner, it wouldn't be a strike in New Jersey. But in Pennsylvania, we treat that, we treat a certificate of merit as a pleading. And in fact, under State law, we consider the failure to follow a mandatory procedure, such as filing a certificate of merit, a strike. Our State PLRA is modeled after the Federal PLRA. And in a case, Richardson v. Thomas, out of the Commonwealth Court, the court said that's a strike. So help me out here. And since this comes in the reply brief, you didn't have a chance to respond to it in writing. But I'm looking at pro bono counsel's reply brief at 14. And it says, the court attempts to distinguish this guidance from, is it Schmeigel? How do you say the gentleman's name? I have no idea. Schmeigel. Sounds good. I'll use yours, Schmeigel. Contending that the use of should indicates the permissive, not the mandatory. And then they go on to say the government mechanically applies statutory construction rules to evaluate the decision. But those tools are ill-suited to analyzing a judicial guidance. So it seems like their argument is, and Mr. Butaro will be bringing this up himself, I'm sure, that a fair reading of Schmeigel is that we said, yeah, we're interpreting Pennsylvania law. It's substantive law. And the way we're interpreting it is, for purposes of the federal rules, you can't use 12b-6. I don't think you use Rule 56. Now, the flaw in that is what? Without going back to Pennsylvania law, assume for the sake of discussion that they're correct in saying that the word should here was directive and not permissive. Are you out of luck at that point? If that's how you're going to read should, yes. But I don't think that's how you've interpreted it. I don't think the district courts have read it that strictly as Mr. Butaro has. So, yes, if you say should is mandatory, like shall, then, yes, we lose. But I don't think you've interpreted that case that strictly, and neither has the district courts. Your Honor, the last issue of the four here we have here is the issue of imminent danger. Now, the parties disagree about the state of the law, but every circuit court to have considered this issue has concluded that a nexus is required by Section 1915G. Now, the statute doesn't use the word nexus explicitly, but it's implicit based on the text, the context, structure, history, and purpose of Section 1915. As your Honors know, the rule is the three strikes provision is the rule, and the imminent danger provision is the exception. Now, fundamental principles of statutory construction counsel that we don't interpret the exception to swallow the rule, but that's exactly what would happen under Mr. Butaro's. Address Pettis. Pettis got it right. Pettis said Congress has identified an injury in fact through the use of an imminent danger, and there has to be a redressability requirement because that's the whole point of bringing a lawsuit, is to gain some kind of redress. And this Court has followed Pettis for almost a decade now, starting with Ball v. Hummel, and in a number of single-judge orders. So could we move past all these interesting questions we've been talking about this whole time and just say, well, we could assume that they were right on a bunch of these things, but he's just not in any imminent danger. Is that available to us? Why do we – explain how we get here at the end. Well, you get here by the end if he has – you know, there's four issues. Yeah. If we said he's right. Yeah, then he would be able to proceed. Yeah. Right. He would be able to proceed IFP if you say he's under imminent danger. I mean, I wanted to use this baseball metaphor, Judge Greenaway, because I know you love baseball. I needed a Willie Mays day here. I need four home runs. But I'll take three if you get him to three strikes. That was so bad. I'm sorry. It was really bad because Willie Mays never hit four home runs. He did hit four home runs, Your Honor. He did. But three will still get you in the history books. Three will. In any case, Your Honor, I'm sorry for the bad metaphor. That's okay. As I said, I think you should follow Pettis because you've been following it. And I think here Mr. Talley is not under imminent danger of serious physical injury because he is – dealt with, it's very simple, with SCI Benner, and now he's at Fayette. And the relief he sought was specific to Benner. So he would have to naturally go back and amend his complaint. Now, he's not without a remedy, Your Honor. If you do say that he has no nexus, he can go back to the district court and start over and file a new lawsuit. And even if he has three strikes, if this constitutes imminent danger, he can start over. But if he's in imminent danger, that doesn't make an awful lot of sense. Well, I'm not relying on imminent danger provision that he's in imminent danger or not. I'm saying there's no nexus between what he alleged in his complaint and what he alleged in his IFP motion. I cite a number of cases like the Fourth Circuit, the Ninth, the Eleventh, that all you had inmates, for example, in the Eleventh, I think, having to do with judges were mishandling his claim, and his IFP motion dealt with unsanitized hair clippers. So there's no relation. All of his, I mean, couldn't we fairly read his complaint not to be directed specifically to the place where he was incarcerated, but to the notion that I'm unsafe in a cell without proper fire suppression equipment, and that's still true? I understand that, but I think he specifically used the words S.C.I. Benner, and he's bound by his complaint. And, again, I think he would need to amend it. That's our position, Your Honor. Okay. Thank you very much. All right. Thank you very much. Your Honor, just a couple quick points in rebuttal. First, picking up on the medical malpractice issue. The reason why this Court has said that certificate compliance or affidavit compliance should be evaluated on a summary judgment standard is because it is necessarily looking to matters outside the pleadings. Section 1915G, of course, is looking to the pleadings. Well, speak to Mr. Scrincy's point, if you would, that should should be read permissively, and that, in fact, district courts have read it permissively because to read it otherwise is unduly restrictive because really the underlying Pennsylvania rule is a timing-dependent rule. So you could have the time, now I'm putting words in his mouth maybe at this point, you could have the time expire so that it is on the face of it a case subject to dismissal and that really what Schmeigel was about was a premature jump at it. And that was all. It was just premature, but you could have had a motion to dismiss under 12b-6 had you waited the requisite time period and let it elapse. Speak to that argument, if you would. Sure. Let me see if I can address that. So I'd come back to what I was sort of touching on a moment ago, which is that the reason it's should is because you're looking outside of the pleadings, and that means we're out of the world of Section 1915G. Now, it is true, as my friend said, that this Court has affirmed in non-presidential orders some district courts that have addressed certificate compliance issues under Rule 12b-6. But I don't think those really do what they want them to do here. The reason is, is because in those cases the procedural disposition could be a technical error, but not one with any real substantive difference. But here it has a tangible and meaningful difference because it governs the question of whether this should be within the ambit of Section 1915G or outside of it. Yeah. But that shouldn't, that seems peculiarly result-driven to say, well, we don't care how it's happening unless it's within this context. We should care no matter what context it's in, whether the appropriate vehicle is being used or not. And so I'd like you to answer, if you could, the assertion that since it's substantive law for purposes of eerie, you can have a case where, on the face of the complaint, necessarily, and the time having expired, no certificate of merit means you're out of court because the time you had within which to file it, you didn't file it, you're done. And that's just, it doesn't require anything outside the pleadings, doesn't require an affidavit. It just requires the court to look at the complaint, look at the calendar and say, you're finished. What's wrong with that argument? Well, I think the problem is it's a little difficult to give a perfectly clear answer because the law here isn't perfectly clear. The court has said should. It has also seemed to contemplate that this could be resolved on a Rule 12b-6. I understand that argument that in certain contexts it might be facially apparent and susceptible to a Rule 12b-6. But I also look back to the Neuven decision, which says that necessarily we're looking outside of the pleadings to evaluate the certificate issue. And that's why the court has seen. Go back to excessive force. Sure. You led with that. I think you maybe thought that was your strongest point. You want to address the state's argument that you cannot divorce the language from the heading. It's unfair to do it that way. And if you accept the heading, it is a dismissal. It's a strike. Go ahead. You were hitting it before, but hit it again. Thank you very much. Yes, I agree that in many ways that is the most straightforward way to resolve this, which is why I focused on that. Our argument isn't that the headings can never serve as making clear the dismissal grounds. What we're saying is that this heading with this claim doesn't make it clear. And that's because I think an example can actually make this clear. Say that the court declined supplemental jurisdiction over one of the State law claims. The heading would still be true as it states that the complaint fails to state a claim against the Commonwealth defendants. But that doesn't mean that all claims have been dismissed for failure to state a claim. In that situation, the court would have declined supplemental jurisdiction. And we know from Talley v. Wetzel that that would make it a mixed dismissal that cannot qualify as a strike. And so here we have a claim that has been withdrawn, which, again, could well have been done under the court's inherent authority as this court discussed in the Washington v. Gilmore decision that we cite in briefing. So we can't simply assume that a heading that doesn't say all claims are dismissed for failure to state a claim necessarily means that everything that follows was dismissed under Rule 12b-6. Do you have anything else to add about where an ambiguous disposition lands, whether it lands in favor of the State or in favor of the defendant or plaintiff-prisoner? Because here it seems that at best your argument is it's really not clear what the court did. And if it's really not clear what the court did and the prisoner has the burden of persuasion, how do you get past that? An unclear dismissal means that the tie is going to go to the party looking to proceed IFP. And, again, I would point to the Washington v. Gilmore decision, for instance. I thought there was sort of an agreement right at the start that if there's a tie, it goes against the IFP because the IFP proponent is the one carrying the burden of persuasion. Did I misunderstand? No. You're correct that the IFP proponent bears the ultimate burden of persuasion here, and I agree with that. So baseball rules, like the tie has got to go against the IFP proponent, doesn't it? Not when we're reading this. Not when we're arguing this point against the backdrop of this Court's jurisprudence that holds that a dismissal must be explicitly and correctly made on Section 1915G enumerated grounds. This Court has put a very high standard as to what is required for a strike to accrue, and it has affirmed that in multiple decisions. That depends. That outcome depends upon our accepting that it's not sufficiently clear to say what the heading says in this case, right? Exactly, yes. If the Court said that a strike accrues, if it's possible that under a theory of reading the opinion in order, that opinion in order is consistent with strike accruing, but that's not what it said. It said it must be clear. It must be explicit. So I know my time has expired now, so unless the panel has any additional questions, I will rest. All right. Once again, we thank you and your firm for your service. We thank both counsel for argument this morning. We've got it under advisement.